The United States Court of Appeals for the 11th Circuit is now open according to law. I'll say the United States and it's on record. Thank you. Good morning. This is Beverly Martin. I am here with Judge Newsom and Judge Julie Carnes, and we're delighted to be with you. This is a little bit experimental, but yesterday it went very well, and I hope it will today as well. Since there's not a clock that we're all looking at, Ms. Geddes is going to help us with time notices. And I told you in our notice to you that we are going to give you the first two minutes of your argument without interruption. So I think with those instructions, we're ready to get underway, so I'll call the first case of James Crocker v. Deputy Sheriff Steven Eric Beatty and Martin County Sheriff Snyder. Good morning. Good morning. Your Honor, Ralph Goldberg. May it please the Court, I represent Mr. James Crocker. Mr. Snyder has been dismissed by previous order of the Court, so we're just arguing about issues related to Mr. Beatty, who is the Deputy Sheriff. Go ahead. There are four issues that are raised in this case. Two relate to the illegal arrest, one under federal law and one under state law. There's a First Amendment issue regarding the taking of the video camera, and there's an issue under the 14th Amendment as to whether or not Mr. Crocker was punished by being placed in an unventilated car during the time that he was waiting to be taken to the jail. There was no arguable probable cause to arrest, either under federal law or under state law. It doesn't matter. Under state law, the question is, did the offense take place in the presence of the officers? And there's no evidence to that. We start off with the assumption and the law that the person opposing the motion is always entitled to every inference. And in this particular case, there is simply no evidence that at the time Mr. Beatty made the arrest that my client had violated any law whatsoever. Furthermore, there's no evidence at any time until long after the arrest about whether or not there was anything in the presence. Mr. Beatty does not point out anything in the presence, and in his brief, he specifically does not argue that Mr. Beatty saw or heard or smelled or whatever other sensor is my client driving the vehicle, which would have been the substance of the offense. Well, Mr. Goldberg, and I believe I've given you two minutes at this point, there is a Florida case, if they're not Horsley v. State, that indicates as far as the sense requirement, this is Judge Carnes, that at least one court has explained the requirements met when the officer either sees or otherwise detects by his senses that an individual has committed a crime. So let's say you have a law that you have a secure governmental facility, it's fenced in, and no one's allowed to enter that facility. An officer comes in, there's someone inside the facility, the officer didn't see him enter, but the officer can reasonably infer that he had to have entered because there he is. How do you handle that particular case authority? Well, Your Honor, the way I handle it is I cite you to Crouch v. City of Miami, and another case, which I believe is Horsley. The Crouch case is a case where a boat is illegally docked in the Miami Bay. There's no doubt that the boat was illegally docked. The officer goes to the house of the individual and arrests them for illegally docking the boat. And the Florida Court of Appeals says that there's no crime in the presence of the officer. The other case, which I think is Horsley, and I may be wrong about that, but it's a case involving somebody who puts on a tag on the car, and the person is driving around. No, it's the Weaver case. The person is driving around with an unregistered vehicle. The license plate does not match the car, and everybody knows that that's true. But the Court of Appeals in that particular case said that because you didn't see anybody put the tag on the vehicle, that again, there was no crime in the presence. It isn't that you get to see the end result. It's that you have to see it at the time you arrest. So under the second statute, 316.138, which is no pedestrian shall walk upon a limited access facility or ramp, even though an officer could see someone in the median, know that unless they were helicoptered in or somehow magically got there, that they had to walk to get there, because the officer didn't actually see the person physically walk, that person would not have committed the violation. That's correct. That is correct. The statute basically has exceptions, and the exceptions, let's see here. On a roadway or shoulder of a limited access facility, no one shall be either on the roadway, on the paved portion, except that a vehicle which is disabled or in a condition improper to be driven as a result of mechanical failure or crash, may be parked on such a shoulder for a period of not exceeding an hour. I'm talking about another statute in addition to that one, the one that says no pedestrian shall walk upon a limited access facility. Well, let me phrase it this way. For false imprisonment law under Florida law, there's no Devon Peck application. Certainly there would be some kind of Devon Peck application as to whether or not there was a crime under 1983 and the Fourth Amendment. But the fact that he's on the grass next to the median is not the same thing as saying that he's walking on the median. He could have just gotten out. And we get back to the fact that there are at least nine or ten other people at the same position. So what is it about Mr. Crocker that gets him arrested? The answer is fairly clear. The officer says, I want your video camera. And he takes it from him. The jury below found that that was a Fourth Amendment violation. So there isn't any evidence. He doesn't see him get out of a car. And I think that's the point. Mr. Goldberg, this is Beverly Martin. You mentioned the nine or ten other people standing there with Mr. Crocker. What evidence do we have? I mean, were they filming like he was? Well, there are a number of other people filming, okay? I'm not going to tell you that they were each filming exactly the same thing because I do not know it. I don't think the record shows that. But there are certainly six or seven other people filming at the same time. And is that from the trial evidence? Or how do we know that? Where is that in the record? I think the answer is that, Your Honor, I apologize, but somebody has just called in on my line. So if you can't hear me because a phone is ringing. I can hear you. Well, good. Then I'm going to keep going. The evidence, I believe, comes from his affidavit, which is attached to the response to the motion for summary judgment. From Mr. Crocker's affidavit? Mr. Crocker's affidavit. That's correct, Your Honor. And is it anywhere else in the record that there were other people doing the same thing he was doing? I think there's some indication from Mr. Beatty that there were other people there. I don't think he comes out and says that they were taking pictures. But certainly Mr. Crocker's affidavit does say that there were other people taking pictures. All right. Thank you. So this is Judge Newsom. Can I ask you a quick question? You said right before Judge Martin asked you a question that no one saw him drive up, or that the officer didn't see him drive up, that there was no evidence that he drove there. But didn't your client sort of give that issue up in his own testimony? I mean, he said twice that I could find that in conversations with Beatty, Beatty said, like, go back to your car, and your client said, I was happy to oblige, happy to cooperate. I mean, isn't he sort of acknowledging that he drove there? Well, Your Honor, I think not. And I'm going to see if I can explain it this way. Because I had the same question, I must say. Counsel, you have a two-minute warning. Okay. The answer to the question is that he doesn't say that he drove the car. He says, basically, I'm willing to leave, which I interpret to mean that he would get whoever the person, which could be interpreted to mean that he would get whoever the person who drove him. Now, I understand that there's no person who drove him, but whoever the person who drove him to leave. The point we're talking about, though, is that we're entitled to an inference. And, again, there is no inference to that effect. Well, but just so we're clear, I mean, about 13 pages deeper into the transcript, your client says, Beatty, the officer, told me to get in my car and drive to the northbound way station. Which has to be read in light of Beatty's deposition testimony, quote, I assumed. And then he was asked, did you ask him why he was there? No, I did not.  Real quickly, because I only have a couple minutes, I want to talk about putting him in the unventilated car. I think the big, big statement is it's not meant to be comfortable. Can I ask you just a quick question about this? Why are we evaluating this particular hot car claim under the 14th Amendment rather than the 4th? This seems just like it was part and parcel of the arrest. There may not be a huge difference between the standards, but why is this a 14th Amendment claim at all? Your Honor, it's a 14th Amendment claim because counsel at trial, and I was not at trial, waived their 4th Amendment claim. Okay? They said they were particularly going under the 14th Amendment. And so, and the court ruled on it under the 14th Amendment. The problem was that the court applied an 8th Amendment standard. Yeah, and I sent a case site to the court earlier last week, Dean v. Gladney, a 5th Circuit case, where actually they did it. This is back in 1980, and they didn't realize how far the 8th Amendment went. Where the court did hold that under certain circumstances, putting somebody in the car like that could be an 8th Amendment violation. But you've got to go back to the statement. Counsel, your time has expired. Stop then. Thank you. Thank you. Good morning. This is Bruce Bogan. I represent Deputy Beattie in the case. The district court correctly granted qualified immunity to Deputy Beattie on the plaintiff's claims of unlawful arrest, excessive force, and 1st Amendment. In order to grant qualified immunity to Deputy Beattie on the 4th Amendment unlawful arrest, the court need only find arguable probable cause or probable cause for any offense under Florida law. We have argued at least four separate statutes could have been the basis for his arrest. The clearest violation I think the court has already pointed out here today was in relationship to Florida Statute 316.130, subsection 18, which makes it illegal for any pedestrian to walk upon a limited access highway. It's undisputed Mr. Crocker was standing in the median of I-95 when Deputy Beattie observed him and ordered him to leave. Mr. Crocker had no right to be in this location at that point and admittedly he was not rendering aid but taking photographs with his cell phone. And clearly based on the undisputed summary judgment evidence, qualified immunity was correctly granted on the 4th Amendment unlawful arrest and false arrest claim. The district court judge also correctly found qualified immunity bars plaintiff's 14th Amendment excessive force claim. During the summary judgment hearing, plaintiff dropped the 4th Amendment excessive force claim but now argues objective reasonableness test should have been applied and relying upon the Supreme Court case in Kingsley. However, the Kingsley case does not clearly establish the rights of an arrestee before arriving at the jail. Even so, the application of Kingsley does not change the outcome of this case. The district court found the plaintiff's 14th Amendment claim failed because the plaintiff could prove he suffered only de minimis injuries during his arrest and not the failure to prove the intent to cause harm. Thus, regardless of whether we apply the standard in Kingsley or the 14th Amendment, the plaintiff's claims fail because his summary judgment evidence didn't prove an injury sufficient to rise to the level of either a 4th or a 14th Amendment violation. Oh, sorry. I didn't mean to speak over someone. Go ahead. Go ahead. So, this is Judge Newsom. Just a quick question. With respect to the Kingsley-Piazza issue, the 14th Amendment issue, I think I understand your point that even if the district court hadn't misapplied the standard, you think you would still win. But isn't that something that the district court should decide in the first instance? Well, I mean, I think at this point, based on a de novo review, it really could be applied very simply. And that is looking at what the elements that are going to be necessary in either a 14th or a 4th Amendment violation, depending on whichever standard, you still have to show that there's more than a de minimis injury that was sustained by Mr. Crocker. And he can't show that. The facts are the facts and the evidence is in the record right now. And so, even if you want to apply Kingsley, and this court should be able to do that as a de novo review, it would establish that there is no constitutional violation of even applying Kingsley. Let me ask you about Kingsley. So, the inquiry there would be, you know, was the force used against Mr. Crocker objectively unreasonable? And so, I wanted you to tell me, address for me, what you say is the permissible purpose for your client to have, you know, locked the doors, turned off the air conditioner, rolled up the windows, and left Mr. Crocker in the car. What was the purpose, permissible purpose for doing that? Well, I guess the, in response to the Kingsley inquiry, it's objectively reasonableness. And so, his subjective intent really isn't part of an objectively reasonable analysis. So, I can't really tell you in terms of an intent that there would be a purpose for turning down the air conditioning, if that's your question. No, my question is, what was the permissible purpose served by your client intentionally turning off the air conditioning and leaving Mr. Crocker in the car with the windows rolled up? So, again, I don't know that his, he can articulate a purpose for doing so, Your Honor. Okay. And even applying a Kingsley standard, I don't believe, objective, let me restate that. Applying a Fourth Amendment objective reasonableness standard, which is what I understand Kingsley said you should do, if you're looking at, from an objective standpoint, his intent or purpose for doing the hot car is not part of the analysis. So, this is Judge Newsom. It may be that you and Judge Martin are talking sort of across one another. You might be hearing her when she says purpose to say something about sort of cracking open the head of the officer and psychoanalyzing him. I think all she means is, like, what was the justification, the objective justification? Well, again, he was being placed in the back of a patrol car because he was under arrest. So, the justification is putting him in the car to transport him to jail. Now, as far as turning off air conditioning, I don't know that there's a justification for turning off air conditioning. In terms of the final issue as it relates to the First Amendment claim, I would simply point out to the court, we believe, again, that the district court judge correctly determined that the law was not clearly established under the circumstances of this case, that Deputy B's actions of taking the cell phone while he was photographing the scene was something that would be a clear violation of the First Amendment. The Eleventh Circuit, as well as the Supreme Court, had limited case law in that time frame in terms of the right to photograph police in terms of, or not necessarily even police first responders, because that's really what he was photographing. But the circumstances under which Mr. Crocker was doing so, in the middle of I-95, in the median of a serious fatality, an automobile rollover crash, that he was standing at least 40 to 50 feet from that serious scene, the circumstances under which he had a right to photograph that scene without being subject to reasonable time, place, and manner restrictions had not been clearly established. So, under the circumstances, I believe that the court correctly made that determination. Mr. Fogan, this is Beverly Martin again. When the district court ruled on this case in 2017, and this is about the First Amendment retaliation claim, since I've mispronounced your client's name, I'm afraid to pronounce the name of the Supreme Court, or Nieves, I'm not sure which one it is, was decided in 2019, and it created an exception where there's a group of people engaging in, you know, kind of doing the same thing. In other words, they were all standing there filming, but it was Mr. Crocker who had engaged in the protected speech, and nobody else did, and Mr. Crocker was the only one arrested. How does the decision in Nieves, Nieves, I mean, shouldn't we send this back to the district court to consider what the Supreme Court said in that case in 2019? I think that the court, you know, could clearly, at this point, determine that the Nieves case is not on fours or on particular point with what the circumstances were in this particular case, and that's the best explanation that I can give you. Obviously, the district court judge, I don't believe, cited that case in her opinion. It hadn't been decided yet, so we can't blame her too much for that, I don't think. So that's a good point, yes. Mr. Bogan, this is Judge Julie Carnes. I have one fundamental question on this, which is, did the plaintiff in his complaint, in any of his briefing, raise the issue of First Amendment retaliation in terms of the arrest? When I read it, I read it's just a clean issue that he had no right to take his phone away or to try to keep him from filming. I didn't see anything in the complaint or Mr. Goldberg's briefing that suggested this Nieves issue was something even raised by the plaintiff. Did I miss something? No, I believe that's correct, Your Honor. There is no retaliation. The phone was taken, obviously. There's no claim of retaliation based on the arrest. I saw nothing in the record that suggested the plaintiff litigated or raised this issue at all, but I could have missed something. No, I believe you're correct, Your Honor. I don't believe there's any allegation of retaliation, nor has that been argued. I believe that the phone was taken because Deputy Crocker, excuse me, Deputy Beatty, mistakenly believed he had a right to take it under exigent circumstances as evidence of a crime, and that's what he told Mr. Crocker at the time he took the phone away from him. Thank you. Unless you have any other questions, I don't have anything else. May I please record this? This is Ralph Goldberg again. Judge Karnes, answering your question, there is no claim for retaliation. Certainly it would be in my recommendation to trial counsel if we survive this panel's opinion to move to amend, but there is no such claim in the complaint that was filed in this case. Thank you, Mr. Goldberg. I appreciate your candor. I want to go back and talk about Horsley very quickly because I was asked about that at the beginning. That's a case about open containers, and what happened in that case was one officer saw the person carrying the container, but he didn't know that it contained alcohol. And the other officer did not see him carrying, but knew that it contained alcohol, and the court in that case held that it was not within the presence. And I think that's very significant in light of the fellow officer rule, which to me might have led to the different result. But Horsley is a case where they specifically did not find that the alleged crime was in the presence. Real quickly, he talks about the minimus injuries, but you're not required to show bruising to show an injury under the 14th Amendment. And in the brief I cited Hudson, which is an 8th Amendment prisoner case, particularly Justice Blackmun's concurring opinion, and Bell v. Walfish, where the 14th Amendment violation in Justice Powell's concurring opinion was a strip search. And surely there was no bruising from the strip search. So I think he gets back to what is the purpose, and when you keep saying the words, it's not meant to be comfortable, that I think speaks volumes. This is Judge Carnes, Julie Carnes again, Mr. Goldberg. My understanding is that whatever the 14th Amendment says, that at least on an arrestee, a Fourth Amendment case, which should be giving the most generous standard to a plaintiff, that we always have had the concept that there has to be something more than the minimus injuries. We have a long line of cases. I think Judge Marcus blew the case with Sebastian more recently and set out all those cases. So my question is, Sebastian's 2019. What, if that is the standard, how do you surmount the standard of the lack of the minimus injuries? I think the question in these cases, and I discussed this a little bit in the brief that I cited, the Slicker case from the Second Circuit, which had been cited by this circuit, and I apologize, I can't remember the case that this circuit cited it. But you make a distinction between physical injuries and emotional injuries, and none of the law that you're talking about regards emotional injuries as the minimus. I am not saying that he had a physical injury. It would be ludicrous to say that he had a physical injury. He said that he was sweating and that sort of thing, but it would be ludicrous to say he had a physical injury. But there's nothing in this circuit's precedent that I know of that says that an emotional injury, even an emotional injury by itself, is the minimus. If that is the law, we're going to be quite busy, I think, Mr. Goldberg, with 1983 cases. I think any person that's arrested by the police, everybody's going to have an emotional injury. It's going to be upsetting for most people unless you're a hardened criminal and you're used to it. Well, Your Honor, like anything else, that's up to the jury to determine whether or not there's an emotional injury, and I'm not quite sure that juries are as liberal as you think they are. It's not a question of being liberal or not. It's a question of I don't know that our case law applies to emotional injuries, but secondly, let's understand what you're saying. We live in the South. People get arrested. There could be moments where a car is hot and, you know, five minutes, whatever, air conditioning's not working. None of that is optimal. You don't want anybody to be uncomfortable, but I guess the logical extension of your position is anytime that happens, even five minutes in a hot car, you're upset about it, you're upset about being arrested, you're sweaty, off to a jury we go with those facts. No, Your Honor. The reason I think not is because it's up to the jury to determine whether or not there's a 14th Amendment violation. You're saying really summary judgment almost could never be granted in those circumstances. I'm saying specifically in cases that we're talking about right now, which are, you know, put them in a hot car kind of situation. I mean, you know, I get off of work and I get into my car on a hot summer day and my car's hot. That's not a 14th Amendment violation. Counsel, your time has expired. Thank you, Your Honor. I'd like to finish his answer. So the question, I mean, the jury is the one that makes the determination whether or not the car was overheated for an excessive period of time. It's not unusual, it seems to me, that a car being overheated for an excessive period of time causes real injury. It's not just based on the idea, oh, I suffered injury. I mean, because what that is basically is going back to 100 years where people didn't have emotional distress cases because everybody thought they were faking it. So I don't think that it upsets the circuit's precedent. Thank you, Mr. Goldberg. Thank you, Your Honor. All right. Thank you very much for the presentation.